PEOPLE v CARNER

Docket No. 48553. Submitted June 3, 1981, at Lansing.—Decided July
    12, 1982.

    David E. Carner was charged with engaging in first-degree crimi-
    nal sexual conduct with his teenage daughter. Following a jury
    trial in Oakland Circuit Court, Robert L. Templin, J., defendant
    was found guilty of criminal sexual conduct in the third degree.
    *Defendant appeals. In his opinion for reversal* N. A. BAGULEY,
    J., *held:*

        1. Reversal is mandated by reason of the failure of the trial
    court to exercise its discretion when it determined to permit
    the introduction of evidence of prior sexual acts between the
    defendant and the complainant.

        2. The trial court abused its discretion in refusing to limit

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 8, 15-17] 29 Am Jur 2d, Evidence §§ 324-326.

    65 Am Jur 2d, Rape § 70 *et seq.*

    Admissibility at trial of criminal case, of evidence of defendant's
        criminal acts other than those charged—Supreme Court cases. 93
        L Ed 184.

    Admissibility, in prosecution for sexual offense, of evidence of other
        similar offenses. 77 ALR2d 841.

[2, 17] 5 Am Jur 2d, Appeal and Error § 881.

[3, 4, 9] 5 Am Jur 2d, Appeal and Error § 809.

[3-6, 9] 81 Am Jur 2d, Witnesses §§ 515, 516.

[5] 81 Am Jur 2d, Witnesses §§ 612, 613.

[7] 5 Am Jur 2d, Appeal and Error § 896.

[9] 81 Am Jur 2d, Witnesses § 74.

[10] 29 Am Jur 2d, Evidence § 719.

    65 Am Jur 2d, Rape § 79.

    Time element as affecting admissibility of statement or complaint
        made by victim of sex crime as res gestae, spontaneous exclama-
        tion, or excited utterance. 89 ALR3d 102.

[11] 21A Am Jur 2d, Criminal Law § 753.

[12] 21A Am Jur 2d, Criminal Law §§ 872, 873.

[13] 81 Am Jur 2d, Witnesses §§ 641, 644.

[14] 75 Am Jur 2d, Trial § 241.

    Comment or argument by court or counsel that prosecution evi-
        dence is uncontradicted as amounting to improper reference to
        accused's failure to testify. 14 ALR3d 723.

the scope of the prosecutor's cross-examination of a witness for the purpose of showing bias where the line of questioning brought out inflammatory matter under circumstances where the inflammatory testimony had marginal probative value relative to the question of bias.

3. The trial court erred in permitting the prosecution to present extrinsic evidence of the prior inconsistent statement of a witness relative to a collateral matter, since the prosecution elicited the statement concerning the collateral matter and was thus bound by the witness's testimony.

4. The defendant was denied a fair trial by reason of the overzealous behavior of the prosecution coupled with the trial court's failure to exercise any discretion in controlling the prosecutor's conduct.

5. Reversal is mandated by reason of the failure of the trial court to positively indicate and identify the fact that the court was exercising its discretion in determining whether to admit for the purpose of impeachment evidence of defendant's prior conviction.

6. The late endorsement of witnesses does not mandate reversal.

7. Since a delay of more than 18 months in bringing a defendant to trial results in a presumption of prejudice, the duty is on the prosecution on remand to rebut that presumption of prejudice.

8. The prosecution properly used prior consistent statements of the complainant to rebut defense counsel's implication that the complainant's trial testimony was coached.

BEASLEY, P.J., concurred in the conclusion that reversal is mandated; however, he would hold that the admission of the prior acts testimony was proper, that the broad brush conclusion from the entire record that the defendant was deprived of a fair trial is not an independent ground for reversal, and that no error resulted from the trial court's failure to embark on a dissertation on how it reached its determination with respect to the admission of the prior conviction evidence.

M. J. KELLY, J., concurred with Judge BAGULEY on all issues except the similar acts issue. As to that issue he concurred with Judge BEASLEY.

Reversed.

OPINION BY N. A. BAGULEY, J.

1. CRIMINAL LAW — EVIDENCE — PRIOR ACTS — RULES OF EVIDENCE.
Evidence of prior sexual acts between the complainant and a

defendant charged with criminal sexual conduct in the first degree may be admissible to show force or coercion at the time of the charged offense; such evidence is admissible only where the trial court determines, in its discretion, that the probative value of the evidence outweighs its prejudicial effect (MRE 404[b]).

2. CRIMINAL LAW — EVIDENCE — PRIOR ACTS — RULES OF EVIDENCE.

   *The failure of a trial court to inquire as to the nature of the evidence of specific prior bad acts which are sought to be admitted to establish the elements of a crime and weigh the probative value of such evidence against its prejudicial effect before admitting that evidence constitutes an abuse of discretion mandating reversal (MRE 404[b]).*

3. WITNESSES — CRIMINAL LAW — BIAS — APPEAL.

   A witness may be questioned about his or her bias concerning a defendant even where the questioning might introduce evidence that the defendant committed another offense; the scope of cross-examination of a witness to show bias rests in the sound discretion of the trial court and will not be deemed error absent a clear showing of an abuse of discretion.

4. CRIMINAL LAW — EVIDENCE — BIAS — PREJUDICE.

   It is an abuse of discretion for a trial court to permit cross-examination of a witness as to collateral matters for the purpose of showing the bias of the witness where the nature of the cross-examination is highly prejudicial to the defendant and the probative value is minimal by reason of the fact that the witness has already admitted that he lied to the police.

5. CRIMINAL LAW — EVIDENCE — CROSS-EXAMINATION — IMPEACH-MENT.

   The rule of evidence which allows admission of extrinsic evidence of a prior inconsistent statement of a witness if the witness is afforded an opportunity to explain or deny the statement is limited by the collateral matter rule which prohibits the prosecution from using prior inconsistent statements to impeach any statements concerning collateral matters which were elicited by the prosecution from the witness, the prosecution being bound by the witness's testimony as to collateral matters elicited by the prosecution (MRE 613[b]).

6. EVIDENCE — COLLATERAL MATTERS — CROSS-EXAMINATION.

   A matter raised on cross-examination is collateral if the cross-examining party would not be entitled to go into it in the case in chief.

7. CRIMINAL LAW — FAIR TRIAL.

A criminal defendant is denied a fair trial where the prosecution engages in overzealous and prejudicial behavior and the trial court fails to exercise any discretion in controlling the prosecution's conduct.

8. EVIDENCE — PRIOR CONVICTIONS.

A trial court must exercise its discretion in deciding whether to exclude a reference to a prior criminal conviction; in the discharge of that duty, the trial court must positively indicate and identify its exercise of discretion.

9. CRIMINAL LAW — ENDORSEMENT OF WITNESSES.

Late endorsement of a witness by the prosecution does not mandate reversal where the defendant fails to show any prejudice resulting from the denial of an opportunity to properly meet the testimony of such a witness.

10. EVIDENCE — HEARSAY — EXCITED UTTERANCES — RULES OF EVIDENCE.

A statement made by the complainant on the day following an alleged act of criminal sexual conduct relating to that conduct is not an excited utterance within the meaning of the excited utterance exception to the hearsay rule (MRE 803[2]).

11. CONSTITUTIONAL LAW — CRIMINAL LAW — SPEEDY TRIAL — BALANCING TEST.

A balancing test is employed in attempting to resolve whether a defendant's right to a speedy trial has been violated; such test considers the following four factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

12. CONSTITUTIONAL LAW — CRIMINAL LAW — SPEEDY TRIAL — DELAY — PRESUMPTIONS.

Prejudice to a criminal defendant is presumed after a delay of 18 months in bringing the defendant to trial; the prosecution has the duty to rebut this presumption of prejudice.

13. EVIDENCE — PRIOR CONSISTENT STATEMENTS — REBUTTAL.

Prior consistent statements of a witness may be admitted to rebut the suggestion raised by opposing counsel that the trial testimony of the witness was coached.

14. CONSTITUTIONAL LAW — CRIMINAL LAW — RIGHT TO REMAIN SILENT — PROSECUTORIAL COMMENTS.

A prosecutor's statement that the state's evidence is uncontra-

dicted does not constitute an impermissible comment on the defendant's right to remain silent.

### OPINION BY BEASLEY, P.J.

15. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS EVIDENCE.

Evidence of similar acts, to be admissible, requires the following foundation: (1) substantial evidence that the defendant actually perpetrated the bad act; (2) the bad act must be probative of defendant's motive, intent, absence of mistake, design, scheme, plan or system in committing the charged offense; and (3) the evidence must be material to the determination of defendant's guilt of the charged offense.

16. CRIMINAL LAW — EVIDENCE — SIMILAR ACTS EVIDENCE — CRIMINAL SEXUAL CONDUCT.

Evidence of prior sexual assaults on a complainant by the defendant in a trial for criminal sexual conduct in the first degree is admissible where there is substantial evidence that the defendant committed the prior assaults since such evidence is probative of defendant's scheme, plan, or system in committing the charged offense and demonstrates the use of force or coercion which is an element of the charged crime.

17. EVIDENCE — PRIOR CONVICTIONS.

*The failure of a trial court to embark upon a discussion of how its conclusion to admit for impeachment purposes evidence of a prior conviction is not evidence of a failure by the court to exercise its discretion.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Geoffrey H. Nichol,* Assistant Prosecuting Attorney, for the people.

*Lander C. McLoyd,* Assistant State Appellate Defender, for defendant on appeal.

Before: BEASLEY, P.J., and M. J. KELLY and N. A. BAGULEY,* JJ.

N. A. BAGULEY, J. Defendant was convicted of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

third-degree criminal sexual conduct, MCL 750.520d; MSA 28.788(4), after a jury trial in Oakland County Circuit Court. He was sentenced to 14 to 15 years in prison and appeals as of right.

Defendant was charged with raping his 16-year-old daughter on January 6, 1978, using force or coercion. On appeal, he has raised numerous allegations of error, several of which require reversal. We first discuss those errors which mandate reversal.

## I

### ADMISSION OF PRIOR SEXUAL INVOLVEMENT BETWEEN DEFENDANT AND HIS DAUGHTER

Prior to trial, defense counsel moved to preclude the use of similar acts evidence by the prosecutor and asked for an offer of proof detailing the similar acts evidence which the prosecutor intended to introduce. The defense motion was denied, the trial judge stating that the bad acts testimony had much more probative value and far outweighed any "slight prejudice" which might occur to the defendant. The jury was later instructed to consider the evidence only to determine if the defendant "was acting purposefully, that is, that his acts were the result of a characteristic scheme, plan or system he had used before".

The complainant's testimony concerning similar sexual acts included allegations that defendant would first tell her he was going to have sex with her, hit or slap her if she resisted, and then have sex with her. This evidence tended to prove that any verbal demands by defendant for sexual intercourse were in fact threats and complainant could have reasonably believed that force and violence

would follow if she did not comply with the demands.

The use of force or coercion is an element of the charged offense. See MCL 750.520d(1)(b); MSA 28.788(4)(1)(b) and MCL 750.520b(1)(f)(ii); MSA 28.788(2)(1)(f)(ii). The prosecution, therefore, had to present evidence of force or coercion in support of the charged offense. Under MRE 404(b), similar acts evidence may be admissible for purposes other than to prove the character of a person and to show that he acted in conformity therewith. The testimony that defendant, on many occasions before the charged offense, had threatened complainant then beat and raped her tended to establish force or coercion at the time of the charged offense.

Evidence of prior acts tending to show force or coercion at the time of the charged offense may be admitted where its probative value is not outweighed by its prejudicial effect. Unfortunately, the trial judge admitted carte blanche all the prior bad sexual acts of defendant, refusing to inquire into the specific bad acts before they were disclosed to the jury. By so doing, the trial judge precluded the proper exercise of his discretion to exclude evidence which was more prejudicial than probative. By abdicating his discretion, the trial judge abused his discretion.

Although we hold that the trial court abused its discretion here, we take note that the exception to the general rule precluding use of similar acts testimony announced in *People v DerMartzex,* 390 Mich 410; 213 NW2d 97 (1973), would apply here. In that case, the Court found that admission of evidence of antecedent sexual acts was especially

justified where an inchoate offense was charged against a member of the victim's household. Otherwise, the testimony of the victim concerning the apparently isolated assault might appear incredible. The trial court utilizing that exception must still, however, exercise its discretion and exclude the proffered evidence if its probative value is outweighed by potential prejudicial effect. The exception in *DerMartzex* was expanded in *People v Hammer,* 98 Mich App 471, 475; 296 NW2d 283 (1980), to allow evidence of antecedent sexual acts between the defendant and other members of the same household as the defendant and complainant in the charged offense.

Regardless of whether the prior sexual acts testimony was admissible on the issue of force or coercion or under the rule of *DerMartzex,* the trial judge, upon being asked by the defense to exercise his discretion to exclude the testimony as overly prejudicial, should have determined what the actual testimony would entail before ruling that it was admissible. We find his failure to exercise his discretion to be reversible error.

## II

### THE PROSECUTOR'S IMPEACHMENT TACTICS

For some unknown reason, defense counsel on direct examination questioned a next-door neighbor of defendant concerning her statements to police shortly after learning of the alleged incident between the complainant and defendant. The witness stated that her first reaction upon learning of defendant's alleged behavior was to hate defendant and try to make defendant look as bad as possible when she spoke with police officers. Later,

she changed her attitude about defendant and
indicated that what she had told the police officers
was not really true. On cross-examination, the
prosecutor asked the witness whether she had told
officers that defendant had told her he carried a
gun 24 hours a day, that he had killed four people
a long time ago, that he wrote a book called
"Jailhouse Blues" and that defendant had come
over to her house one day with a large handgun.
The witness agreed that she had told the officers
all of the above except for the statement regarding
defendant's coming over with a large handgun.

Defense counsel moved for a mistrial, arguing
that the mention of such matters before the jury
was grounds for a mistrial and reversible error
and that the prosecutor's questions were outside
the scope of direct examination. The motion was
overruled after the prosecutor stated that defense
counsel had elicited testimony from the witness
that she had lied to the police, entitling the prose-
cutor to go into it on cross-examination. The prose-
cutor also asked the witness if she had told police
officers that defendant had told her he was a hit
man. She was also asked if she had told police
officers that defendant always had money. The
witness replied negatively to both questions. The
witness was further asked whether she had told
police officers that one of defendant's sons told her
his dad would kill the family if people found out
what was going on. The witness replied that she
had told this to police officers but that it was not
true. Defense counsel again objected.

All these "questions" posed by the prosecution
were technically proper cross-examination to im-
peach the witness's credibility for truthfulness. See

*People v Bouchee,* 400 Mich 253, 266; 253 NW2d 626 (1977); MRE 608(b).

We have held that a witness may be questioned concerning her bias in regard to a defendant even where the questioning might introduce evidence of another possible offense against the defendant. *People v Chaplin,* 102 Mich App 748, 751; 302 NW2d 569 (1980), *rev'd on other grounds* 412 Mich 219; 313 NW2d 899 (1981).[1] The scope of cross-examination of witnesses to show bias rests in the sound discretion of the trial court and will not be deemed error absent a clear showing of abuse of discretion. *Chaplin, supra.*

While the prosecutor's questions here were particularly probative of the witness's credibility for truthfulness, the questions also severely prejudiced defendant. Further, the witness had already testified on direct examination that she had previously lied, making it unnecessary for the prosecutor to delve into specific allegedly untruthful statements by the witness regarding prior bad acts of defendant.

---

[1] While the Supreme Court reversed our holding in *Chaplin,* the reversal does not affect the validity of the rule that evidence of bias is generally admissible. See 412 Mich 225. The Supreme Court's primary objection was that "to demonstrate that Lindy Ellis is a prostitute is not to show that she has the character trait of untruthfulness".

Further, the Court stated:

"If the prosecutor desired to show bias, it would have been sufficient to elicit an admission from the witness that she had posted the money to secure the defendant's release on bail. Instead, however, the prosecutor chose to emphasize Miss Ellis's prostitution activities and thereby necessarily suggested to the jury that the defendant was a person of bad character because he was closely associated with a prostitute and may have been her pimp." *Id.*

The Court also determined:

"The evidence was not admissible under MRE 608(b) because the conduct involved was unrelated to truthfulness. Insofar as the evidence was relevant to show the bias of the witness, it should have been excluded because the danger of unfair prejudice substantially outweighed its probative value." *Id.,* 226.

This Court has generally not found error on this ground since the allowance of cross-examination on collateral matters to impeach the credibility of a witness is generally within the discretion of a trial judge in a criminal prosecution. *People v Kelly,* 66 Mich App 634; 239 NW2d 691 (1976). The witness's alleged lies to police were brought out on cross-examination to attack the credibility of that witness. However, upon defendant's objection that the statements were inflammatory and prejudicial, the trial judge should have exercised his discretion to exclude the statements. They were only of marginal probative value once the witness had already admitted lying, and their prejudicial effect was extreme. The trial judge abused his discretion in refusing to limit the scope of the prosecutor's cross-examination. *Cf. People v McGillen #1,* 392 Mich 251, 268; 220 NW2d 677 (1974) (when rebuttal testimony is so inherently inflammatory and prejudicial, the trial judge upon objection should consider whether or not any probative value is outweighed by the inherent prejudice to the defendant and, if so, exclude it from the testimony).

## III

### REBUTTAL TESTIMONY ON COLLATERAL MATTERS

The prosecutor presented a rebuttal witness to contradict the neighbor's testimony regarding her statements to police. The officer testified that he interviewed the neighbor. The neighbor stated that the complainant had told her she was raped several times by defendant and was warned not to tell anyone or she would be killed. Defendant's objection on hearsay grounds was overruled. The officer also testified that the neighbor told him that defendant had come to the neighbor's house one

night and pulled out a large handgun, that defendant told her that he was a hit man, and that defendant did not work much and always had money.

The officer's testimony regarding the neighbor's prior statement to him that complainant had said she would be killed by defendant if anyone discovered the sexual assaults was improper extrinsic evidence of a collateral matter. Since the neighbor testified on direct examination that complainant did not tell her why no one should be told about the assaults, the prosecutor was entitled to ask the neighbor on cross-examination, if not overly prejudicial, whether she told the police that the complainant had said that she would be killed by her father if anyone discovered the sexual assaults. MRE 613(b) allows extrinsic evidence of a prior inconsistent statement by a witness if that witness is afforded an opportunity to explain or deny the statement. However, the admissibility of extrinsic evidence of a prior inconsistent statement is limited by the collateral matter rule announced in *People v Williams,* 159 Mich 518, 521; 124 NW 555 (1910). See, also, *People v Culver,* 280 Mich 223; 273 NW 455 (1937), *People v Spalla,* 83 Mich App 661, 671; 269 NW2d 259 (1978) (dissent by Judge KELLY adopted by the Supreme Court), *rev'd* 408 Mich 876; 290 NW2d 729 (1980).

There is no question that the officer's testimony regarding the statements about the defendant's handgun and alleged status as a hit man were collateral matters extremely prejudicial to defendant. The officer's testimony regarding the neighbor's statement of the complainant's fear of defendant requires closer scrutiny to determine if this involved a collateral matter. In *Bixby v Gallagher,*

43 Mich App 328, 339; 204 NW2d 295 (1972), this Court adopted an Indiana Supreme Court test as to whether or not something is "collateral". If the cross-examining party would be entitled to go into the matter in its case in chief, the matter is not collateral. In the instant case, the prosecutor could not have presented the neighbor's statements to the officer regarding the complainant's statements to the neighbor in his case in chief because the complainant's statements were hearsay. Therefore, all of the officer's testimony regarding the prior inconsistent statements of the neighbor constituted improper extrinsic impeachment on collateral matters. The officer's testimony, together with the prosecutor's inflammatory questioning regarding other alleged bad acts of defendant, were highly prejudicial to defendant and should not have been admitted by the trial court. Neither the cross-examination nor the rebuttal testimony presented by the prosecutor survived either prong of the harmless error rule. See *People v Lauzon,* 84 Mich App 201, 205; 269 NW2d 524 (1978).

## IV

### Denial of a Fair Trial

A review of the entire trial record convinces us that defendant was deprived of a fair trial by the overzealous conduct of the prosecutor and by the trial court's failure to control the prosecutor's conduct and provide serious consideration of defendant's attempts to fairly present his case.

In addition to the errors noted above, we hereby note some further instances of prejudicial behavior by the prosecutor. Defendant was linked to the Oakland County child slayings by innuendo. The

complainant was questioned by the prosecutor regarding her moral opposition to abortion (complainant had an abortion allegedly as a result of the alleged sexual attack by her father). The complainant also testified concerning defendant's alleged sexual abuse of his other children. Throughout the trial, the trial court did not appear to exercise any discretion to exclude any inflammatory material, despite its pervasiveness.

## V

### Impeachment of Defendant by Prior Conviction

Prior to jury selection, defense counsel had moved to bar the prosecution's use for impeachment purposes of defendant's 1971 conviction for attempted rape. Both counsel asked the judge to weigh the probative value of the conviction against the prejudicial effect of its use. The court denied the motion without comment.

On request, a trial judge must exercise his discretion in deciding whether to exclude reference to a prior conviction record. *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974). In order to comply with the rule in *Jackson,* the trial court must positively indicate and identify its exercise of discretion. *People v Cherry,* 393 Mich 261; 224 NW2d 286 (1974). Although counsel for both sides here argued the probative effect versus the prejudicial impact of the prior conviction, the trial court merely stated that the motion *in limine* was denied. The situation in the instant case is quite similar to that in *People v West,* 408 Mich 332; 291 NW2d 48 (1980), and, therefore, we hold that the trial court erred by not positively indicating and identifying its exercise of discretion in deny-

ing the defense motion to suppress the prior conviction.

## VI

### Remaining Issues

Defendant raises several other issues on appeal, none of which requires reversal.

Defendant contends that two witnesses who were endorsed over defense objection the morning of the first day of trial were not res gestae witnesses and testified to inadmissible hearsay statements by the complaining witness. It is true that the two witnesses, a social worker at complainant's high school and a protective services worker with the Oakland County Department of Social Services, were not res gestae witnesses and, therefore, did not have to be endorsed by the prosecutor. The social worker interviewed the complainant the afternoon prior to the day on which the alleged offense occurred and on the day following the offense. The protective services worker was present during the second meeting with the complainant. At that meeting, the complainant told the two witnesses of the rape which had allegedly occurred the night before. See *People v Johnston,* 76 Mich App 332, 337; 256 NW2d 782 (1977). Even though the prosecutor was not required to endorse these witnesses, no reversible error occurred because defendant has not shown prejudicial surprise which deprived him of an opportunity to meet the evidence. In ruling that the late endorsement would be permitted, the trial court made it clear that defense counsel could have any time he needed to interview the witnesses endorsed that day. Defendant does not now claim that he was

denied such an opportunity. Therefore, no prejudice has been shown. *People v Yacks,* 49 Mich App 444; 212 NW2d 249 (1973).

Defendant's claim that the testimony of the two late-endorsed witnesses concerning statements made to them by the complaining witness was inadmissible hearsay is correct. The statements made by the 16-year-old complainant the day following the alleged rape were not excited utterances. *People v Sommerville,* 100 Mich App 470, 488-490; 299 NW2d 387 (1980); MRE 803(2). Even though the trial court erred in admitting the hearsay statements of the two witnesses, we do not find that defendant was prejudiced. Another witness, Eileen Blanchard, testified at trial to hearsay statements of the same sort complained of in this appeal. Additionally, complainant testified regarding the people with whom she discussed the history of her sexual abuse and the rape which is the subject of this appeal. Since defendant has not raised the issue of the admissibility of such testimony by Blanchard and the complainant, and since we are reversing defendant's conviction on several other grounds, we decline to determine whether the errors which defendant has objected to on appeal were prejudicial and require reversal.

Regarding defendant's contention that his constitutional right to a speedy trial was violated, we find that the record is too sketchy to make a determination. Because of the impact on the prosecution's right to retry defendant, defendant is entitled to an evidentiary hearing at which the trial judge should consider and make a ruling on several factors which are crucial to defendant's claim that his right to a speedy trial was violated.

The record establishes that defense counsel moved to dismiss for denial of defendant's speedy trial rights on May 11, 1979. Counsel claimed that defendant had continuously insisted that his case be set for trial and that the case had been set and adjourned against his wishes. Counsel specifically claimed that several defense witnesses were not interviewed or investigated and could not then be located as a result of the delay. A hearing apparently was held on the motion to dismiss on July 18, 1979, but no transcript of this hearing on the speedy trial claim has been provided to this Court. The motion to dismiss was denied without comment on August 2, 1979, after trial had already begun.

The Michigan Supreme Court in *People v Collins,* 388 Mich 680, 688; 202 NW2d 769 (1972), recognized as the definitive test the general rule applicable to speedy trial cases established in *Barker v Wingo,* 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972). The test requires a balancing of four factors: length of delay, reason for delay, whether defendant asserted his right to a speedy trial and prejudice to defendant caused by the delay.

Under Michigan law, delay in excess of 18 months results in a presumption of prejudice. *People v Den Uyl,* 320 Mich 477; 31 NW2d 699 (1948). It is the prosecutor's duty to rebut this presumption of prejudice. *People v Bennett,* 84 Mich App 408; 269 NW2d 618 (1978). Defendant here was arrested January 24, 1978, and trial commenced on July 30, 1979. Therefore, absent a proper explanation by the prosecutor, prejudice to defendant is presumed. *People v Bennett, supra.*

Even without the aid of the speedy trial hearing transcript, it is apparent that at least some of the delay was due to defendant. In March, 1979, defendant's first appointed attorney was replaced by his actual trial attorney, apparently at defendant's request. On December 14, 1978, defendant's first appointed attorney requested an adjournment for approximately two months. Beyond this, we cannot determine to what extent the 18-month delay can be attributed to defendant. Since unexplained delays are attributable to the state, *People v Giles,* 48 Mich App 466, 469; 210 NW2d 515 (1973), it is up to the prosecutor on remand to establish an acceptable reason for the delay and the amount of the delay which is attributable to defendant.

Defendant contends that he asserted his demand for a speedy trial in October of 1978. This claim cannot be verified by reference to the file. Therefore, defendant should be given an opportunity on remand to show that he asserted his right to a speedy trial in October of 1978, and the trial court should make a finding of fact with respect to defendant's claim. If it is established that defendant did assert his right to a speedy trial, this factor is "entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right". *People v Bennett, supra,* 411, quoting from *Barker v Wingo, supra,* 531-532.

Regarding the fourth factor of prejudice to defendant, because of the 18-month delay, the prosecution must rebut the presumption of prejudice. The speedy trial guarantee protects three interests of defendant: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. The last of these

interests is the most serious. *Barker v Wingo,*
*supra; People v Grimmett,* 388 Mich 590; 202
NW2d 278 (1972). Since defendant was on bail for
the last 16 months before trial, it cannot be said
that he suffered significant prejudice to his person
due to the delay under the first two of the pro-
tected interests of the speedy trial right. However,
defendant does generally claim that his defense
was prejudiced by his inability to produce certain
witnesses for the defense as a result of the delay.

On remand, the prosecution should be given the
opportunity to rebut any specific instances of prej-
udice which defendant may make. The trial court
should make a specific finding regarding any con-
flict in opposing claims by the defense and the
prosecution. Once the trial court has made appro-
priate findings on each of the four factors, each of
the factors should be balanced to determine
whether defendant's right to a speedy trial was
violated.

We do not believe that reversible error occurred
simply on the basis that the prosecutor asked a
witness whether defendant told her that he had
written a book entitled "Jailhouse Blues". While
this question, when considered with other prejudi-
cial questioning by the prosecutor, has been deter-
mined to require reversal, the question alone did
not severely prejudice defendant. It did not, as
defendant claims, necessarily alert the jury to
defendant's previous incarceration.

No error occurred in the prosecution's opening
statement. The prosecutor was not disparaging the
credibility of defense witnesses by stating that she
would not call family members as witnesses. She
stated that the family may not have known what

was going on between defendant and his daughter. Compare *People v Erb,* 48 Mich App 622, 631; 211 NW2d 51 (1973).

We also do not feel that the prosecutor improperly used prior consistent statements of the complainant to bolster her credibility. Defense counsel implied during cross-examination that the complainant was coached in her testimony by the prosecutor and that her testimony was not the same at trial as statements earlier made to the prosecutor. Therefore, the prosecutor's questioning of the complainant on rebuttal brought out evidence probative of whether the complainant had made prior inconsistent statements. It was within the trial court's discretion to allow such testimony. *Stewart v People,* 23 Mich 63, 74-76 (1871).

Since reversible error has been found elsewhere, we decline to consider whether error requiring reversal was committed by the prosecutor in asking the complainant about her pregnancy and subsequent abortion. The pregnancy and abortion did not show penetration as an element of the charged offense since the complainant was found to be pregnant one day after the charged offense. See *People v Borowski,* 330 Mich 120, 125; 47 NW2d 42 (1951). Indeed, the prosecution, in its opening statement, indicated that the complainant had probably gotten pregnant as the result of a prior rape by her father on December 3, 1977. We agree that the similar acts evidence might have been admissible under the rule of *DerMartzex, supra,* if the trial court had recognized and exercised its discretion in admitting evidence of such acts. However, it is a separate question whether the complainant's pregnancy and abortion should also have come in to bolster the complainant's

credibility regarding the testimony of other acts. If the evidence of the similar acts of defendant was properly admitted, and we have earlier held it was not, the evidence of the complainant's pregnancy and abortion was also relevant to establish that one of the prior acts had actually occurred.

The prosecutor did not impermissibly comment on defendant's silence at trial by indicating that the complainant's testimony was uncontradicted. *People v Balog,* 56 Mich App 624, 628; 224 NW2d 725 (1974).

The remaining error, which concerns a violation of the indeterminate sentencing act, MCL 769.8; MSA 28.1080, is moot since we are reversing defendant's conviction. However, we note that the defendant was erroneously sentenced to a term of 14 to 15 years. The trial court should have sentenced defendant to a minimum term of only two-thirds of the maximum term. *People v Tanner,* 387 Mich 683, 690; 199 NW2d 202 (1972).

Reversed.

Beasley, P.J. *(concurring).* I concur in reversing and remanding for a new trial.

I do not, however, share the conclusion that the trial judge abused his discretion by the way he handled the prior similar sexual acts testimony. Defendant argues that the similar act testimony was improperly admitted. In *People v Yeo,*[1] this Court analyzed the admissibility of prior bad acts under MRE 404(b) and stated:

"[T]his Court imposed three standards to establish a foundation for similar acts evidence: (1) substantial evidence that defendant perpetrated the bad act, (2)

---

[1] 103 Mich App 418, 425-426; 302 NW2d 883 (1981).

that the bad act be probative of defendant's motive, intent, absence of mistake or design, scheme, plan or system in committing the charged offense, and (3) that the evidence be material to a finding of guilt for the charged offense. See also *People v Richard Johnson,* 99 Mich App 377; 297 NW2d 672 (1980)."

Defendant's prior sexual assaults on the victim in this case were admissible. There was substantial evidence that defendant committed the other sexual assaults. The evidence was also probative of defendant's scheme, plan, or system in committing the charged offense. The prior bad acts demonstrated defendant's use of force or coercion which is a material element of criminal sexual conduct in the first and third degrees.[2] Therefore, I would find that the similar acts testimony was admissible so long as the prosecution established the proper foundation.

Neither do I share the broad brush conclusion that from the "entire trial record" defendant was deprived of a fair trial by overzealous conduct of the prosecutor and by the trial court's failure to control the prosecutor's conduct and provide serious consideration of defendant's attempts to fairly present his case. Imputation of reversible error should be specific.

I do not agree that, in ruling upon defendant's motion to suppress reference to a 1971 conviction for attempted rape for impeachment, the trial court erred by "not positively indicating and identifying its exercise of discretion" in denying the motion. In the context of the oral argument concerning defendant's motion, I would hold the trial judge exercised his discretion. Failure to embark upon a dissertation of how he reached his conclu-

[2] MCL 750.520d(1)(b); MSA 28.788(4)(1)(b) and MCL 750.520b(1)(f)(ii); MSA 28.788(2)(1)(f)(ii).

sion is not evidence of failure to exercise his discretion.

However, the assistant prosecutor's cross-examination of Carol Hedglen, a neighbor who was called as a defense witness, was improper and highly prejudicial. While great latitude is given on cross-examination, the actions of the prosecutor in bringing before the jury the allegation that defendant told the witness that he had killed four people a long time ago, that he had written a book called "Jailhouse Blues", that he said he carried a gun 24 hours a day, and that he was a hit man, far exceeded the scope of matters brought out on direct examination.

Thus, by her cross-examination of this witness, the prosecutor brought before the jury inflammatory matters not relevant or material to defendant's guilt or innocence and which reached a level so as to constitute reversible error. The prosecutor called another neighbor as a rebuttal witness who testified as to collateral matters of a highly prejudicial nature.

Last, the sentence imposed by the trial court was obviously in violation of *People v Tanner*.[3] Since this is a concurrence, I would not see any purpose in further comment regarding other details of the majority opinion. Consequently, I would concur in reversing for the reasons indicated in this opinion.

M. J. KELLY, J. *(concurring)*. I concur in Judge BAGULEY's authored opinion requiring reversal and in Judge BEASLEY's concurring opinion on the similar acts issue.

---

[3] 387 Mich 683, 690; 199 NW2d 202 (1972).